CHIEF JUSTICE WILLIAMS
delivered the opinion op the court.
This appeal involves a question of priority between two creditors and a question of usury.
E. IT. Abbott purchased a tract of one hundred and forty-four acres of land, adjoining his home place, from W. E. Simmes, on which he still owed the last installment, with a vendor’s lien, when, August 1, 1862, he borrowed of appellant Glass legal-tender United States treasury notes, and agreed to pay their nominal amount in gold, with usurious interest, and executed his several notes at one, two, three, and four years for $2,129.50 each, and gave a mortgage on the Simmes land to secure them.
Glass, it may be presumed, had not only constructive but actual notice of this outstanding vendor’s lien.
Simmes having assigned to Wheat the note of $2,708.61 on Abbott, being the last payment on the land, judgment was obtained by the assignee in May, 1862, which was replevied by Crockett, as surety, July 15,1862. Execution on the replevin bond issued in December, 1862, and was levied February 2, 1863, on both the Simmes and home tract of one hundred and forty-three acres still belonging to Abbott.
Within a week or less of this levy Pullen, the appellee, Abbott’s son-in-law, advanced the money to pay Wheat the amount of his execution, and took an assignment of the same. No further effort was made to collect' said *348 execution for over two years, when, March 20, 1865, Pullen sued out another execution on the replevin bond, and had it levied on the Simmes tract, May 3d, when he indorsed on the execution “ The sheriff is directed to levy this fi. fa., and return it for venditioni exponas,” and there it stopped.
The same day that this execution was so levied and indorsed Pullen bought Abbott’s home tract of one hundred and forty-three acres at sixteen thousand dollars, out of which he paid mortgages and encumbrances on it of some nine thousand dollars or more, over thirteen hundred dollars in cash to Abbott, and the residue of over five thousand dollars he paid the following June.
Nine days after these transactions Abbott conveyed all his property to 'E. H. Parish, in trust, to, pay his debts, who, by agreement, sold the property October 26, 1865, when Pullen became the purchaser of the Simmes tract of land at one hundred and four dollars per acre, or near fifteen thousand dollars in gross,' payable, in three equal installments, in six, twelve, and eighteen months, with interest from date.
In November, 1865, Parish as trustee filed this suit in equity to have said sale confirmed, and for a distribution of the trust funds. In this suit Pullen claims the right of subrogation to the vendor’s lien because of the assignment to him by Wheat of the execution on the replevin bond against Abbott and Crockett, it being the last payment of Abbott to Simmes on said land; which Glass resists, and claims priority over Pullen because of his mortgage.
Now, to put Pullen’s claim to priority in its most favorable aspect for him, concede that he had the right to purchase the execution from Wheat, and by doing so he became entitled to Wheat’s equitable lien, which he held *349 as assignor of tbe vendor, and that Pullen was entitled to the same rights under the same circumstances that Simmes would have been, and that the replevy of the common law judgment and execution was no waiver of this lien; still as by the execution levy the execution creditor became invested with a legal lien on property not subject to his vendor’s lien nor to Glass’s mortgage, what does equity require of him?
Is it not a familiar doctrine that' if one creditor can resort to two funds and another to but one of them, the former will be compelled to seek satisfaction first out of that fund which the latter can not touch ?
In section 633, 1 Story’s Equity Jurisprudence, 598, it is said a mortgagee who has two funds, as against the other specialty creditors who have but one fund, will, in case of the death of the mortgagor and the administration of his assets, be compelled to resort first to his mortgage security, and will be allowed to claim against the common fund only what the mortgage, on a sale consented to by him, is deficient to pay. So if A has a mortgage upon two different estates for the same debt, and B has a mortgage upon but one only of the estates for another debt, B has a right to throw A, in the first instance, for satisfaction upon the security which he (B) can not touch. The reason is obvious, for by compelling A, under such circumstances, to take satisfaction out of one of the funds no injustice is done him in point of security or payment. But it is the only way by which B can receive payment; and natural justice requires that onq man should not be permitted from wantonness or caprice or rashness to do injustice to another.
And in the next section it is said the same principle applies to one judgment creditor who has a right to go upon- two funds, and another who has a right upon one *350 only of them, both belonging to the same debtor. The former may be compelled to apply first to the fund which can not be reached by the second judgment, so that both judgments may be satisfied.
Here Pullen had not only a replevin bond with good security, but an execution, levied on other estate than the mortgaged one, more than amply sufficient to pay his debt; became the volunteer purchaser of such; and paid over to the debtor, after paying the prior liens thereon, more than double the amount of his levied debt, and by his own conduct released both the security and the execution and levy lien ppon such estate. Had Simmes not sold the debt, and had himself done these things, can there be any doubt he would have been postponed by reason thereof to a junior lien created by mortgage. If so, his remote assignee would likewise.
Pullen must now do what the chancellor would compel him to do had he not by his own conduct relieved the execution and levy lien, and thereby failed to collect his prior lien debt, which would have inured to the benefit of the mortgage lien of Glass.
As Crockett, the security in the replevin bond, did not pay the debt, no equity or right of subrogation ever did accrue to him; and as none ever vested in him, Pullen could not claim right to be subrogated to his rights. Indeed, Pullen took Wheat’s assignment and not Crockett’s; hence no equitable right could accrue to him through the latter.
But if this were not so, Pullen would still be postponed to Glass, the mortgagee, because Crockett’s equity could not accrue until he paid the debt, certainly not before he became security; and having by his voluntary act prevented the execution creditor from making his debt out of the other estate of the debtor upon which no lien *351 existed, and thereby preventing the junior lien from being strengthened by a satisfaction of the prior lien debt by levy and sale, the security would be postponed as to the junior lien claimant, though as between the original debtor and himself alone he would be entitled to full subrogation to the rights of the execution creditor, but not as to junior lien claimants, as was decided by this court in the cases of Patterson v. Pope, 5 Dana, 241, and Bank of Hopkinsville v. Rudy, 2 Bush, 327.
So if he claims the right of subrogation, through his immediate assignee, from the original vendor, he will be postponed because of his own conduct in not enforcing the execution lien and levy, and voluntarily paying over to the execution debtor more than a sufficiency to discharge this debt and lien on a purchase of the very property levied on.
Crockett, the security in the replevin bond, not having paid the debt, could have no right to be subrogated to the vendor’s lien. Hence Pullen could have no such right through him; but, if he could, still it would be subordinate to Glass’s subsequent mortgage lien.
But the difference between the value of the currency when loaned and gold should be deducted from Glass’s debts, as this must be considered as an evasion of the usury laws now established by a long line of adjudication.
Glass is entitled to collect gold or its value in currency on this contract, as has been heretofore decided by- this court, and lately by the Supreme Court of the Hnited States.
Wherefore the judgment is reversed, with directions to allow Glass priority of lien over Pullen; .but to deduct from his claims the difference between the currency loaned and its value in gold at the time of the loan, and to allow Glass his claims in gold or their value in currency.