## Calhoun v. Federal Land Bank of Louisville et al.

(Decided June 14, 1929.)

(As Modified on Denial of Rehearing, October 4, 1929.)

R. MILLER HOLLAND for appellant.

LOUIS I. IGLEHEART for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee, G. H. Nantz, and W. O. Barr jointly and equally owned the fee-simple title to a tract of land

in Daviess county, Ky., near Owensboro, containing 140 acres. On January 29, 1918, they borrowed $10,000 from the appelle and plaintiff below, Federal Land Bank of Louisville, Ky. (hereinafter referred to as the bank), and executed a mortgage on the entire tract to secure the notes executed in evidence thereof. Those notes extended over a long period of time, but they and the mortgage executed to secure them contain what is ordinarily known as "precipitating" clauses through and by which the owner of them may declare all of them due upon default of payment of any of them or any installment of interest. On January 1, 1920, Nantz sold his one-half undivided interest in all the tract to his co-owner, W. O. Barr, in consideration of the latter assuming the debt due to the bank, and the further payment to Nantz of $10,000, evidenced by ten notes of $1,000 each, and with a second lien on the entire tract to secure them. Barr paid two of them, leaving the other eight unpaid, and on January 3, 1922, Barr sold to Nantz by written contract to convey (usually designated as a title bond) 40 acres of the tract in consideration of the cancellation by the vendee of the eight notes held by him against the vendor, and which cancellation was then and there made and Nantz was put in possession of the 40 acres contracted to be conveyed to him by Barr.

In the written contract, and as a part of its terms, the latter agreed with Nantz to remove the lien of the bank from the 40 acres so agreed to be sold, and to shift it to the remaining 100 acres, and which, of course, was to be accomplished, either by paying that debt or reducing it to such an amount as that the bank would agree to release its lien on the 40 acres and look only to the remaining 100 acres, or in such other manner or fashion as he saw proper to employ. That agreement, of course, was not binding on the bank, but was obligatory as between the two contracting parties, Barr and Nantz, or any acquirer of subsequent rights through either. The contract between those two also required the release of the lien from the 40 acres to be made within two years from the date of the contract, but it was not so done, and on April 29, 1925, appellant and defendant below, Mrs. William Calhoun, loaned to Barr $10,000, evidenced by his note and secured by a second mortgage on only the 100 acres retained by him after deducting the 40 acres agreed to be sold to Nantz. In that mortgage to appel-

lant there was inserted this written exception: ''There is excepted from the above-described tract of land (the whole tract of 140 acres) a tract containing 40 acres sold by the said W. O. Barr and Ora L. Barr (his wife) to G. H. Nantz, by bond dated January 3, 1922, and leaving in the tract hereby mortgaged one hundred acres more or less. The tract sold to the said G. H. Nantz is described as follows,'' etc.

It is therefore clear that appellant, when she made the loan and took her mortgage, possessed actual knowledge of the title bond previously executed to Nantz for the purchase of the 40 acres, and, having such knowledge, she must also be charged with the contents of that writing (Virginia Iron Coal Co. v. Combs, 186 Ky. 261, 216 S. W. 846), and because thereof it is expressly stipulated by the parties in this cause that she actually did possess knowledge of such contents. Matters ran along with Barr defaulting in his payments to the bank, and on December 3, 1927, it filed this equity action against him in the Daviess circuit court to recover judgment for the balance of its debt, amounting to $8,855.32, with interest, and for a foreclosure of its lien on the entire 140 acres, and Nantz and appellant, Mrs. Calhoun, were made parties to or came into the cause and set up their respective claims. Upon final submission the court rendered personal judgment against Barr in favor of the bank for the balance of its debt, interest, and costs, and in favor of appellant against him for her debt, interest, and cost and directed that so much of the 100-acre tract as was necessary to satisfy the judgment in favor of the bank be first sold by the master commissioner and the proceeds applied to the payment of its judgment and that appellant's lien attached only to the surplus of that tract that was not sold, if any, or to the surplus proceeds of the sale of all of it, if all of it should be sold over and above an amount sufficient to satisfy the debt of the bank. It was further adjudged that, if the 100 acres did not bring enough to satisfy the bank's debt, then enough of the 40 acres should be sold for that purpose, and appellant was adjudged no interest in the latter tract.

From that judgment appellant appeals and through her counsel insists here, as he also did in the court below, that the well-established equitable doctrine of ''marshaling of assets'' has no application to the facts of the case, because the rights of more than two creditors are involved, and which is the only situation, as he con-

tends, for the application of that doctrine. On the contrary, he argues with much force that under the minority rule, as applied by this court in the recent case of Bronaugh v. Burley Tobacco Company, 212 Ky. 680, 230 S. W. 97, and other cases referred to in that opinion, his client was entitled to a judgment directing a sale of the two tracts, i. e., the 100 acres and the 40 acres, separately, and that the bank should be required to make its debt pro rata with appellant out of the separate proceeds of the two tracts, and that what was left of the proceeds of the 100-acre tract after both debts were so prorated should be paid to her, and what was left of the proceeds of the 40-acre tract should be adjudged and paid to Nantz. The court, however, as we have seen, adopted the insistence of learned counsel for Nantz to the effect that under the facts of this case his client was entitled to have the proceeds of the 100 acres mortgaged to appellant first applied to the existinguishment of the bank's debt, and that appellant would then be entitled to the excess proceeds, if any, but in no event was *she* entitled to require or demand a sale of the 40 acres agreed to be purchased by him, although the bank would have such right as against Nantz if the 100 acres did not bring enough to pay its debt.

The Bronaugh case, which is the chief one relied on by learned counsel for appellant, discussed the doctrine of marshaling of assets, although there were involved the rights of more than two successive creditors, and in the opinion therein, and also in the citations therein referred to, as well as the text in 18 R. C. L. 456, sec. 4, and 38 C. J. 1366, sec. 3, it is pointed out that the marshaling doctrine emanates only from a promulgated equity rule for the accomplishment of substantial justice where the existing conditions call for its application for that purpose, and it does not arise to the dignity of a lien, nor to the level of contract acquired rights. Neither may the one entitled to invoke it thereby displace or to any extent impair a prior acquired lien, or contract right, so as to deprive such prior possessors of any of their rights under their contracts. 38 C. J. 1367, 1368, secs. 5, 6, and 18 R. C. L. 456, sec. 3. The one entitled to invoke it may shuffle the prior lienholder around, in such a manner and fashion as to not produce unreasonable delay, in the choice of procedure for the enforcement and collection of his debt; but according to the authorities, supra, as well as the dictates of the innate principles of exact justice, he cannot, by the

exercise of the privileges conferred on him by that doctrine, deprive to any extent a prior lienholder of any of the securities which the latter has for the payment of his debt. The one asserting the right may require such prior lienholder to first exhaust a portion of his security before moving against another portion upon which the invoker of the doctrine also has a subordinate lien and for the protection of which the doctrine itself was originated; but no authority, nor any opinion of any court, permits the subsequent creditor, in the exercise of such equity right, to curtail the ultimate contractual rights of the prior lienholder, and which universally applied rule is thus stated in the text of 18 R. C. L. sec. 10: ''The court will never marshal securities to the prejudice of the prior creditor, or so as to put his claim in jeopardy, or on any other terms than giving him complete satisfaction. For, in protecting the junior creditor's equity, the court cannot lessen the senior creditor's security or vary his contract, except so far as waiting a short time to ascertain the value of the securities can be considered as having that effect. The creditor who asserts the equity to marshal securities must show that the rights of his cocreditor will neither be endangered nor injuriously delayed, and that there is no reasonable doubt of the sufficiency of the one fund to satisfy his cocreditor's debt. Delay to the prior creditor is sometimes spoken of as a bar to the relief asked by the subsequent creditor; but mere delay, so long as it is not of an unreasonable length, is not sufficient to compel the court to deny the relief, when no other injury can occur, because some delay is a necessary consequence of the enforcement of all rights.''

But, as we have seen, appellant's counsel insists that the rights of his client are not governed by the foregoing principles of the doctrine of marshaling of assets, but by those announced in the Bronaugh case and others cited therein, and which is the same for which he contends, as hereinbefore pointed out, and which, as he also contends, is entirely independent of and wholly unrelated to the marshaling doctrine. He does not, however, combat the idea that, though he be correct, the doctrine of the Bronaugh case, upon which he relied, is founded only upon the same equitable principles as is the marshaling doctrine, and that the right to invoke the rule announced in the Bronaugh case does not arise to the dignity of a contractual one, but must be and is qualified or destroyed by such facts as would have like result in the application

of any other equitable principle. In this case, as we have seen, the appellant, Mrs. Calhoun, had undisputed *actual* knowledge of the contract between Barr and Nantz at the time the former made his purchase of the 40 acres, to the effect that the latter would shift the lien on the entire tract of 140 acres to the 100 acres remaining after Nantz made his purchase, and to relieve the purchased tract of the burden of any portion of the bank's lien. With that actual knowledge she made her loan and took her lien only upon the 100 acres that her mortagor had agreed should shoulder the entire first lien. Under such facts it is clear to our minds that she thereby waived, at least as between herself and Nantz, her right to insist upon the application of the principles of the Bronaugh case as insisted on by her counsel, even if all things else claimed by her counsel should be conceded by us to be correct. To hold otherwise would be most inequitable, and would allow one to profit through an established doctrine of equity, without himself doing equity, and which is contrary to the fundamental principles of equity.

We therefore conclude that the judgment appealed from was and is correct, and it is affirmed.