CHARLES WHITE CO., INC., Ideal Hardware Co., Lessenberry Building Centre, Inc., James Matthews, Old Planing Mill Co., Inc., West State Steel Co., Inc. and Glasgow Paving Co., Inc., Appellants,

v.

PERCY GALBREATH & SONS, INC., Charles A. Watkins and Elleanor J. Watkins, his wife, Watkins Investments, a general partnership composed of Charles A. Watkins, Carlos Marberry, Jerry Adams, Kenneth Watkins, Gary Cain and Bill McKnight, Geneva Construction Co., J. F. Pace Concrete Products, Inc., McMurtrey Ready-Mix, Bob Ross Plumbing and Heating, Johnson Electric Service, Inc., Southern Fence, Tri-State Construction Co., Rogers Sheet Metal, Jack C. Dodson, Southern Welding & Fabrication, South Central York Co., Bill Wheeler Painting, and Leonard Johnson, Appellees.

Court of Appeals of Kentucky.

Feb. 24, 1978.

E. P. Barlow Ropp, Travis, Ropp & Davis, Uhel O. Barrickman, Richardson, Barrickman & Dickinson, Wilson, Herbert, Garmon & Sparks, Glasgow, for appellants.

Shelly T. Riherd, Riherd, Richardson & Patton, W. L. Gardner, Jr., Redford, Redford & Gardner, Robert M. Alexander, Walter A. Baker, Glasgow, Milliken & Milliken, English, Lucas, Priest & Owsley, Bowling Green, Richard L. Garnett, Glasgow, for appellees.

Before HOWERTON, LESTER and REYNOLDS, JJ.

LESTER, Judge.

Watkins Investments, a general partnership, obtained a construction loan from Percy Galbreath & Sons, Incorporated, which authorized advances of up to $180,000.00 with interest at 10% per annum. In connection with this loan, the partners, including Charles A. Watkins and Elleanor J. Watkins, in their capacity as individuals, signed a promissory note. As security, Percy Galbreath took a mortgage on the premises under construction and received an assign-

ment of rents from the lease on the building after completion that Tractor Supply Company had entered into with Watkins. When Watkins defaulted, Percy Galbreath, in accordance with the terms of the loan, finished the building to preserve the lease which resulted in a total advance of $158,131.55 by Percy Galbreath for construction. Percy Galbreath brought a foreclosure action naming as defendants nineteen materialmen having liens of record totaling in excess of $103,000.00.

Under the judgment, Charles White Company, Ideal Hardware Company, Lessenberry Building Centre, James Matthews, Old Planing Mill Company, West State Steel Company and Glasgow Paving Company will not take part in the prospective distribution of the sale of the property despite their mechanic's liens. Hoping to improve their position through appeal, they challenge the court's decision as it affects their relationship to both Percy Galbreath and the other materialmen. In order to satisfy appellants in regard to Percy Galbreath, we would have to hold that the court erred in setting aside a sale of the property for $201,000.00 and determining that upon sale Percy Galbreath would not have the right to rent for the satisfaction of its loan. Allowing appellants over this dual hurdle would make plausible their argument that Percy Galbreath had two funds from which to retire its superior lien and that it should, therefore, marshall assets. Secondly, the appellants complain of the establishment of priority among the materialmen according to the order that each furnished materials.

Watkins filed a voluntary petition in bankruptcy in the United States District Court for the Western District of Tennessee. The trustee, with leave of court, disclaimed any interest in the property on May 23, 1975. On June 11, 1975, Percy Galbreath filed its complaint.

The special commissioner's report of October 17, 1975, recommended that Percy Galbreath have a superior lien for the following:

| | |
|---|---|
| Disbursements | $158,131.55 |
| Interest | 11,179.02 |
| Commitment Fee | None |
| Legal Fees | 500.00 |
| Appraisal Fee | 450.00 |
| TOTAL | $170,260.57 |

The sum total would take into account a credit of $45,000.00 for rentals collected after completion of the building. Interest was to accrue at ten per cent per annum on $159,081.55 from August 31, 1975 until the date of its judgment and thereafter at six per cent on that amount until paid.

The report indicated that the mechanic's liens acquired priority in the order that the lienholder commenced labor or furnished materials. The report suggested a sale of the property to satisfy the claims. On October 31, 1975, the appellants excepted to the report of the special commissioner insofar as it concerned the priority of the mechanic's liens. On November 6th, the court adopted most of the report of the special commissioner and ordered a judicial sale of the property subject to the lease. The court reserved its ruling on the priority of the mechanic's liens.

The special commissioner conducted a judicial sale of the property. The notice of the sale published in the Glasgow Daily Times contained the information that:

[t]he property is being sold subject to the lease to Tractor Supply Company recorded in Misc. Book 26, page 673 in the Barren County Court Clerk's Office. (A copy of the lease may also be inspected at the office of Bailey & Grissom, the auctioneering agents.)

Leonard Johnson made the high bid of $201,000.00 which the commissioner accepted. The commissioner reported the sale for approval of the court on December 15, 1975. On December 30th, the appellants moved the court to compel the sale of the leasehold interest for first satisfaction of the debt of Percy Galbreath from the proceeds of this sale under the doctrine of marshalling of assets. On January 13, 1976, Johnson requested the court to set aside the sale and void his purchase money bond. The court, on February 13th, denied the equitable re-

lief of marshalling of assets on the grounds that Percy Galbreath did not have two separate sources of security, that in any case appellants waived entitlement to such relief by not raising the question before judgment and order of sale, and that sale of the property subject to the lease transferred all the benefits and responsibilities of the lessor to the purchaser. On March 12th, the appellants appealed. On April 20th, the court entered a judgment which set aside the sale to Johnson for mistake, misunderstanding, and error not attributable to him, and directed the commissioner to establish the priority of the mechanic's liens according to the order in which each lienholder first furnished labor or materials. On May 7th the appellants appealed from the judgment.

The appellants sought to stay the sale of the property but failed to file a supersedeas bond. This court has ruled earlier during this appeal, by order, that the absence of a supersedeas bond prevented a stay of enforcement of the judgment, but did not bar the appeal. Walker Hall purchased the property for $196,000.00 with the understanding that he had the right to the rent under the lease. The circuit court approved the sale. Walker Hall paid the purchase price into the court pending our resolution of this case.

Considering that the appellants have requested equitable relief, the result they wish from application of the marshalling of assets principle strikes us as incongruous. It would not help appellants if we held that sale of the property and sale of the leasehold would constitute two funds from which Percy Galbreath could draw, if we also permitted the court's setting aside of the sale to Johnson to stand. The property would bring little or nothing if the buyer knew that he had neither the right to rent nor the right of possession until the elimination of the sizeable debt to Percy Galbreath. Yet sticking Johnson with the purchase price of $201,000.00 for property he would receive no benefit from for so indefinite a period hardly seems equitable. Appellants have no trouble so burdening Johnson because he bought the property "subject to the lease"

and Watkins had assigned the rents to Percy Galbreath. Appellants attach importance to the assignment which, they claim, when coupled with the phrase "subject to the lease," put the buyer on notice that he could not collect rents. However, since a sale subject to a lease ordinarily means that the buyer becomes the landlord, appellants should have made their position known to the court prior to the sale. *Francis Co. v. Lincoln Federal Building & Loan Ass'n*, Ky., 445 S.W.2d 153 (1969).

As a practical matter, regardless of whether rents have been assigned, a leasehold as security cannot be separated from the property for the purposes of marshalling of assets. The property would not have much value apart from the rent for a term of the outstanding obligation. Division of the two would only decrease the value that the leasehold and the property would have as an entity; causing such a split to create two funds would run counter to the requirement that the use of the doctrine not prejudice the prior creditor. In addition, the parties asserting the doctrine would find a smaller fund from which to reduce their claims. The circumstances of this case do not permit an application of the principle. *Calhoun v. Federal Land Bank of Louisville*, 230 Ky. 460, 20 S.W.2d 72 (1929).

As we have pointed out, appellants' theory of marshalling of assets would only remain desirable to them if Johnson must pay $201,000.00 for the property to which he will have a deferred right to rent. The court properly nullified the sale. *P. A. Blackwell & Co. v. Canoe Creek Coal Co.*, 217 Ky. 778, 780, 290 S.W. 700, 701 (1927) explains the status of a judicial sale prior to court approval:

> Until the chancellor acts upon the report of sale, and accepts the bid and approves and confirms the report of sale, the bidder is not a purchaser, but only a proposer, whose proposition may be accepted or rejected . . . His bid may be rejected at any time by the court for cause shown, but when confirmed he then acquires and assumes burdens for which he cannot be easily discharged.

The court here did not confirm the sale to Johnson. The information provided prior to the sale would have lead any buyer to assume that upon purchase he would have an immediate right to rents. A purchaser would realize that in buying subject to the lease he would not have possession for the term of the lease, but, in the absence of a clear indication of a contrary intention prior to the sale, he would expect that his purchase would allow him to collect rents without delay. The action by appellants placed in doubt whether Johnson could collect rent right away. This uncertainty created through no fault of Johnson's was sufficient cause for the court to set the sale aside. In the second judicial sale, the court took steps to protect the purchaser if an adverse ruling should occur on appeal. The second sale should stand according to its terms.

We agree with appellants that the materialmen and laborers with perfected mechanic's liens share equally and reverse the portion of the judgment that ranks priority from the date that each either began work or furnished materials. The commissioner believed this order of priority to be mandated by the plain wording of KRS 376.010(1) which reads,

> [t]he lien on the land or improvements shall be superior to any mortgage or encumbrance created subsequent to the beginning of the labor or the furnishing of the materials, and the lien, if asserted as hereinafter provided, shall relate back and take effect from the time of the commencement of the labor or the furnishing of the materials.

The court adopted the commissioner's recommendation. However, as Professor Richardson observed in his analysis of the question, so arranging the priority of materialmen contradicts the purpose of the act and "could lead to a ridiculous race to the premises by materialmen seeking to be first to begin furnishing materials." 4, Richardson, *Kentucky Practice* § 1130 at 86 (1974). Such an interpretation would also favor those segments of the construction industry which, because of the nature of the service or materials provided, must come early in the building process. It appears to us that the phrase "shall relate back and take effect from the time of the commencement of the labor or the furnishing of the materials" has reference to the priority that materialmen and laborers will have in relation to creditors not in the class of materialmen and laborers. The last sentence of KRS 376.010(1) lends weight to this view. It states that:

> [t]he lien shall not be for a greater amount in the aggregate than the contract price of the original contractor, and should the aggregate amount of the liens exceed the price agreed upon between the original contractor and the owner there shall be a pro rata distribution of the original contract price among the lienholders.

*Schnute Holtman & Co. v. Sweeney*, 136 Ky. 773, 125 S.W. 180 (1910) also supports our holding that the materialmen and laborers with mechanics' liens share equally after the satisfaction of Percy Galbreath's claim.

The judgment *is* affirmed in part and reversed in part.

All concur.