M.A. WALKER COMPANY, INC., now known as M.A. Walker, LLC, Appellant,

v.

PBK BANK, INC., f/k/a Peoples Bank of Kentucky, VanMar, Inc., both Kentucky Corporations, and Madison County, Kentucky, Appellees.

No. 2001–CA–002017–MR.

Court of Appeals of Kentucky.

Dec. 27, 2002.

Steven Connelly, Berea, KY, for appellant.

Stuart K. Olds, Richmond, KY, for appellee PBK Bank, Inc.

Marc Robbins, Richmond, KY, for appellee Madison County, Kentucky.

Before BUCKINGHAM, HUDDLESTON, and JOHNSON, Judges.

## OPINION

BUCKINGHAM, Judge.

M.A. Walker Company, Inc., appeals from an order of the Madison Circuit Court granting summary judgment in favor of PBK Bank, Inc. M.A. Walker also appeals from the court's order denying its motion to amend its complaint. As for the order granting summary judgment in favor of PBK Bank, we reverse and remand; as for the order denying M.A. Walker's motion to amend its complaint, we affirm.

VanMar, Inc., was involved in real estate developments in Madison County, Kentucky. PBK Bank provided financing for several of the projects developed by Van-Mar, including the development of the Saddlebrook Estates subdivision. In July 1999, PBK Bank loaned VanMar $470,000 to purchase and begin the development of that property. In October 1999, PBK Bank extended a letter of credit, on behalf of VanMar, to the Madison County Fiscal Court. This letter of credit was a condition for the county's approval for the Saddlebrook Estates development plan. The purpose of the letter of credit was to ensure that funds would be available to the Madison County Fiscal Court in the event VanMar failed to develop the necessary improvements, including streets, as set forth in the approved development plan.

M.A. Walker became involved with Van-Mar in the Saddlebrook Estates development as a provider of rock for the roads. M.A. Walker's last delivery of materials took place on June 27, 2000. When Van-Mar failed to timely respond to M.A. Walker's billing requests, M.A. Walker filed a materialman's lien against Saddlebrook Estates. This lien was filed on July 26, 2000.

Subsequent to the date of M.A. Walker's materialman's lien, PBK Bank extended further financing to VanMar in support of the Saddlebrook Estates development. Two additional loans were made in October 2000; one loan was for approximately $363,000, and the other was for approximately $77,000. As with the prior loans made for the development of Saddlebrook Estates, the bank took mortgages on lots in Saddlebrook Estates as well as other properties held by VanMar. As a result of this collateral structure, the bank had the right to satisfy its loans against lots in Saddlebrook Estates, lots in "The Woods," and, in some cases, Lot 3 in Jack's Trace and Lot 103 in The Woods. The bank also provided additional financing to VanMar for the development of properties other than Saddlebrook Estates.

On December 19, 2000, M.A. Walker filed a civil complaint in the Madison Circuit Court seeking to enforce its lien. In addition to naming VanMar as a defendant, M.A. Walker also named other defendants who might have a claim secured by Saddlebrook Estates. Because of its mortgages, PBK Bank was named by M.A. Walker as a defendant in the lawsuit.

PBK Bank filed an answer and cross-claim against VanMar based on loans which were secured by Saddlebrook Estates. The circuit court then referred the matter to a master commissioner.

On April 27, 2001, the Madison County Fiscal Court provided notification to the bank to call the letter of credit based on VanMar's failure to meet its obligations under the Saddlebrook Estates development plan. By this time, the amount on the letter of credit had been reduced from $188,000 to $100,000. The demand was made against the full $100,000.

As these events were occurring, PBK Bank entered into settlement negotiations with VanMar concerning the various collateral sources, other than Saddlebrook Estates, and the debt load then carried based

on outstanding loans. These negotiations resulted in a settlement and release agreement filed with the circuit court on June 4, 2001. Under this agreement the various collateral sources, other than Saddlebrook Estates, were in some portions signed over to the bank. In return, the bank agreed to release VanMar and the collateral, other than Saddlebrook Estates, from further liability against any of the remaining loans. The agreement indicated that PBK Bank set the value of the assets to which it received title at approximately $1.7 million. The record does not indicate any foundation as to how this figure was determined. Based on this figure, the bank credited various loan obligations then owed by Van-Mar. Conveniently for the bank, these credits were applied first to those loans having nothing to do with Saddlebrook Estates and then to those loans attributed to Saddlebrook Estates which were subordinate to M.A. Walker's lien. As a further part of this agreement, VanMar entered a Confession of Judgment with the circuit court in favor of PBK Bank. This document was entered in the record on June 5, 2001.

On June 6, 2001, M.A. Walker filed a motion seeking to amend the court's previous order assigning the case to a master commissioner. In this motion, M.A. Walker asked the court to instruct the master commissioner to make findings concerning the actual amounts due to PBK Bank on the two priority liens. Based on the bank's admission during discovery that some portion of the two October 2000 loans were for refinancing prior debt, M.A. Walker asked that a finding be made as to the existence of a novation as to the priority lien debt. Further, M.A. Walker asked that the commissioner be ordered to make findings concerning the use of the loan proceeds, in particular whether such amounts were diverted from the development of Saddlebrook Estates. Finally,

M.A. Walker asked that findings be made concerning the total payments received by the bank as well as how such payments should be attributed to the various loans. On July 5, 2001, the court entered an order directing the master commissioner to make findings on each of the issues raised in M.A. Walker's motion.

On July 12, 2001, the bank filed a motion seeking summary judgment. Said motion was based on VanMar's confession of judgment in favor of the bank. The bank argued that the sole material issue concerned the priority of filing. Since the bank's first loan and the promissory note underlying the letter of credit, together totaling in excess of $500,000, were filed first by the bank, it argued that those amounts should be satisfied first. The bank conceded that the remaining two loans secured by Saddlebrook Estates were subordinate to M.A. Walker's materialman's lien. M.A. Walker responded and argued that there were material facts that had yet to be determined and that summary judgment should not be granted.

On July 19, 2001, M.A. Walker filed a motion seeking to amend its complaint and add Madison County Fiscal Court as a party because it held a letter of credit from the bank to guarantee construction of the roads in Saddlebrook Estates. Therein, M.A. Walker claimed an interest as a third-party beneficiary in the $100,000 it believed had been paid or would soon be paid to the fiscal court by the bank. M.A. Walker noted that the rock it delivered was used to develop the very infrastructure the letter of credit was issued to ensure.

On August 30, 2001, the circuit court entered an order denying M.A. Walker's motion to amend its complaint. The court held that M.A. Walker was not a party to the letter of credit and could not be consid-

ered a third-party beneficiary to the letter. The court relied on *Utica Mut. Ins. Co. v. Walker*, Ky.App., 725 S.W.2d 24 (1987), which held that strict compliance is required when interpreting letters of credit. *Id.* at 26. Further, the court rejected M.A. Walker's cited authority as distinguishable from the facts herein since these facts involve a letter of credit rather than a performance bond.

The circuit court also issued an order granting summary judgment in favor of PBK Bank. The court accepted the bank's argument that the only issue of fact concerned the priority of filing. The court determined that, after the payment of the expenses of the sale of the lots in Saddlebrook Estates and after paying the court costs, the amounts owed to the bank under its priority filings were to be paid next. Following the payment of those amounts, the court directed that the next $100,000 be paid for the use and benefit of the Madison County Fiscal Court in completing the improvements to the subdivision. Finally, the court stated that the remaining proceeds, if any, were to be held by the master commissioner pending entry of a judgment regarding the claims of M.A. Walker. M.A. Walker filed this appeal from the judgment in favor of the bank and from the court's order denying M.A. Walker's motion to amend complaint.

We will first address the court's order denying M.A. Walker's motion to amend its complaint in order to seek recovery as a third-party beneficiary on the letter of credit issued by the bank in favor of the Madison County Fiscal Court. CR [1] 15.01 is applicable. That rule states in pertinent part that a party may amend its pleading, following the twenty-day period after it is served, "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." CR 15.01. Although leave to amend shall be freely given when justice so requires, the decision is within the discretion of the trial court. *Lambert v. Franklin Real Estate Co.*, Ky.App., 37 S.W.3d 770, 779 (2000). Furthermore, the discretion of the trial court will not be disturbed absent an abuse of discretion. *Id.* While M.A. Walker acknowledges this authority, it argues that the trial court erred in determining that it failed to state a claim upon which relief may be granted. It maintains that it stated a valid claim.

Article V of the Uniform Commercial Code involves letters of credit. *See* KRS [2] 355.5-101 to 355.5-118. "Beneficiary," as that term is used in that section, "means a person who under the terms of a letter of credit is entitled to have its complying presentation honored. The term includes a person to whom drawing rights have been transferred under a transferable letter of credit." KRS 355.5-102(1)(c). "Issuer" is defined in that section as "a bank or other person that issues a letter of credit, but does not include an individual who makes an engagement for personal, family, or household purposes." KRS 355.5-102(1)(i). Furthermore, the statute provides as follows:

> Rights and obligations of an issuer to a beneficiary or a nominated person under a letter of credit are independent of the existence, performance, or nonperformance of a contract or arrangement out of which the letter of credit arises or which underlies it, including contracts or arrangements between the issuer and the applicant and between the applicant and the beneficiary.

KRS 355.5-103(4).

M.A. Walker did not meet the statutory definition of "beneficiary" of a letter of

---

1. Kentucky Rules of Civil Procedure.

2. Kentucky Revised Statutes.

credit under KRS 355.5–102(1)(c). Furthermore, M.A. Walker was not named as a beneficiary under the terms of the letter of credit. Moreover, PBK Bank should not be compelled to assume the risk of VanMar's nonperformance on an underlying contract with M.A. Walker. *See Utica Mut. Ins. Co. v. Walker,* Ky.App., 725 S.W.2d at 26–27, *quoting Philadelphia Gear Corp. v. Central Bank,* 717 F.2d 230, 236 (5th Cir.1983). We conclude that the trial court did not abuse its discretion in denying M.A. Walker's motion to amend its complaint.

■ The second issue is whether the trial court erred in awarding summary judgment to the bank. The bank argued that the sole issue involved the priority of filing. In response, M.A. Walker advanced several theories under which they claimed the bank's priority filing would not be the controlling factor. By accepting the bank's argument that the controlling issue was the priority of filing, the trial court necessarily rejected M.A. Walker's right to recover under any of its theories.

CR 56.03 allows a court to enter a summary judgment where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. The rule is to be "cautiously applied," and "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts must be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* Ky., 807 S.W.2d 476, 480 (1991). Furthermore, "[t]he standard of review on appeal of a summary judgment is whether the trial court correctly found that there was no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft,* Ky.App., 916 S.W.2d 779, 781 (1996).

As we have noted, M.A. Walker's lien was against Saddlebrook Estates property while PBK Bank's mortgages related to both the Saddlebrook Estates property and The Woods subdivision. Some of the bank's loans and mortgages were entered into and recorded prior to M.A. Walker's lien, but some were entered into after the recording of the lien and were thus inferior. During the pendency of the lawsuit, the bank entered into a settlement agreement with VanMar whereby VanMar confessed judgment to the bank and conveyed portions of The Woods subdivision lots to it with "various credits" being applied to VanMar's loans. The agreement valued The Woods subdivision lots conveyed at $1,489,500. However, there is no indication as to how or why the lots were valued at this amount. Furthermore, there is no indication of the value of the collateral released but not conveyed. The bank then turned to the Saddlebrook Estate property to satisfy the remainder of the indebtedness owed to it by VanMar. The trial court granted summary judgment to the bank, over M.A. Walker's objections, based on the priority of the bank's earlier mortgages.

■ M.A. Walker first argues that there are issues of fact which are "material under the doctrine of marshaling of assets which requires PBK Bank to use its full collateral fairly in satisfying its outstanding liabilities." In *Bartley v. Pikeville Nat. Bank & Trust Co.,* Ky., 532 S.W.2d 446 (1975), the court explained the doctrine of marshaling of assets as follows:

> The doctrine of marshaling assets requires that where two or more creditors seek satisfaction out of the assets of their common debtor, and one of them can resort to two funds where another has recourse to only one of the funds, the former creditor may be required to seek satisfaction out of the funds which the latter creditor cannot reach, before resorting to the other fund. By this

method of distribution both creditors may be paid or both funds will be exhausted. *Id.* at 448. As that doctrine applies to the case *sub judice,* there are two creditors (the bank and M.A. Walker) who seek satisfaction out of the assets of their common debtor (VanMar). The bank can resort to satisfaction of the debt owed to it by resorting to both the Saddlebrook Estates property and The Woods subdivision. However, M.A. Walker has recourse to only the Saddlebrook Estates property. Under the doctrine of marshaling of assets, the bank "may be required to seek satisfaction out of the funds which the latter creditor cannot reach, before resorting to the other fund." *Id.*

M.A. Walker argues that there is a genuine issue of material fact concerning the actual value of The Woods subdivision lots, both those conveyed to the bank and those released without being conveyed. As we have noted, the lots conveyed were valued by the bank at $1,489,500. However, there was no explanation as to how this calculation was made. It may or may not have been a reasonable valuation. We agree with M.A. Walker that a true valuation of The Woods lots, both those conveyed and those released but not conveyed, would have a bearing on whether the bank utilized its collateral fairly in order that M.A. Walker's lien could possibly be paid from any excess proceeds.

■ M.A. Walker asserts that there is a second issue of fact concerning whether the loan proceeds listed by the bank at $598,000 were actually expended by Van-Mar on improving Saddlebrook Estates property. M.A. Walker asserts that the bank should lose its priority status as to any amounts which were diverted to projects other than Saddlebrook Estates. M.A. Walker has not cited any authority to support this argument, and we are un-

aware of any such authority. In short, we reject its argument that there is a fact issue in this regard.

M.A. Walker argues that there is a third fact issue concerning whether the indebtedness to the bank incurred by VanMar on October 9, 2000, represented a refinancing of some portion of the previously loaned and unpaid loan proceeds and was thus a novation. M.A. Walker raised this issue after learning through discovery that some portion of the two loans made on that date was for refinancing prior debt. M.A. Walker argues that, to the extent the October 2000 loans were a refinancing of debt involved in the priority lien loans, novation may apply to displace the bank's priority status as to the amounts refinanced. The bank did not address this issue in its brief.

In *Truscon Steel Co. v. Thirlwell Elec. Co.,* 265 Ky. 414, 96 S.W.2d 1023 (1936), the court defined novation as follows:

> A novation is the substitution of a new obligation for an old one, with intent to extinguish the old one, or the substitution of a new debtor for an old one, with the intent to release the latter, or the substitution of a new creditor, with the intent to transfer the rights of the old one to him.

265 Ky. at 416–17, 96 S.W.2d 1023. We agree with M.A. Walker that there are fact issues concerning whether or to what extent the October 2000 notes were a novation substituting a new obligation for an old one.

PBK Bank argues that there were no genuine issues of fact for the court to determine and that summary judgment was appropriate. In support of its argument, it cites KRS 376.010 which states in pertinent part as follows:

> The lien shall not take precedence over a mortgage or other contract lien or bona fide conveyance for value without

notice, duly recorded or lodged for record according to law, unless the person claiming the prior lien shall, before the recording of the mortgage or other contract lien or conveyance, file in the office of the county clerk of the county wherein he has furnished or expects to furnish labor or materials, a statement showing that he has furnished or expects to furnish labor or materials, and the amount in full thereof.

KRS 376.010(2). The bank argues "that PBK Bank's loan for the development of this subdivision was fully disbursed several months prior to that notice. Therefore, the statute mandates that PBK Bank's development loans are prior to the mechanic's lien of M.A. Walker." In response, M.A. Walker asserts that it is not claiming its lien should receive priority over previously recorded bank mortgages. Rather, M.A. Walker argues that the doctrine of marshaling of assets required the bank to utilize its collateral fairly to allow M.A. Walker's lien to be paid from any excess proceeds. We agree with M.A. Walker that, although its lien does not have priority over the earlier bank mortgages, the doctrine of marshaling of assets required the bank to utilize its collateral fairly in consideration of the M.A. Walker lien.

■ Next, in response to M.A. Walker's argument that there was a fact issue concerning the fair value of The Woods subdivision lots, the bank maintains that this was "an issue of fact only if PBK Bank is required to marshal assets by selling that development prior to its sale of Saddlebrook Estates." The bank maintains that it had entered into its settlement agreement with VanMar prior to M.A. Walker asserting the doctrine of marshaling of assets. Therefore, it contends that M.A. Walker did not plead the applicability of the doctrine until it was too late.

The issue of a priority lienholder's release of collateral not subject to a claim by the subordinate lienholder was considered in *Glass v. Pullen,* 69 Ky. (6 Bush) 346 (1869). In that case, the priority lienholder elected to purchase the collateral that was not subject to the subordinate lienholder's claim. As in the case *sub judice,* the subordinate lienholder in the *Glass* case did not raise the doctrine of marshaling of assets until after the priority lienholder had already released the other sources of collateral. *See also Blood v. Munn,* 155 Cal. 228, 100 P. 694, 697 (1909), *and Continental Supply Co. v. Marshall,* 152 F.2d 300, 308 (10th Cir.1945). We hold that M.A. Walker was not barred from raising the doctrine of marshaling assets after the bank had entered into its settlement agreement with VanMar.

Finally, the bank argues that the doctrine of marshaling of assets is an equitable principle which may be applied "only in the event that it does not damage, in any way, the creditor who has properly perfected its lien claims and has access to both funds." The bank cites *Calhoun v. Federal Land Bank of Louisville,* 230 Ky. 460, 20 S.W.2d 72 (1929). Therein, the court held that:

> The one entitled to invoke it may shuffle the prior lienholder around, in such a manner and fashion as to not produce unreasonable delay, in the choice of procedure for the enforcement and collection of his debt, but according to the authorities, supra, as well as the dictates of the innate principles of exact justice, he cannot, by the exercise of the privileges conferred on him by that doctrine, deprive to any extent a prior lienholder of any of the securities which the latter has for the payment of his debt.

230 Ky. at 464, 20 S.W.2d 72. The bank argues that forcing it to liquidate The Woods subdivision along with Saddlebrook

Estates would have caused it "substantial additional delay and expense, and potentially substantial loss." However, the *Calhoun* court also noted that "mere delay, so long as it is not of an unreasonable length, is not sufficient to compel the court to deny relief, when no other injury can occur, because some delay is a necessary consequence of the enforcement of all rights." *Id.* We conclude that there are fact issues involved concerning the application of the doctrine of marshaling of assets to this case which were not addressed by the trial court and which must be resolved prior to any final disposition.

In conclusion, we agree with the bank that the trial court did not err in denying M.A. Walker's motion to amend its complaint. However, we agree with M.A. Walker that the court erred in granting summary judgment in favor of the bank based solely on the priority of filing. There were fact issues to be addressed before a final judgment could be entered.

The order of the Madison Circuit Court denying M.A. Walker's motion to amend its complaint is affirmed. The summary judgment granted by the court in favor of the bank is reversed, and the case is remanded for further proceedings consistent with this opinion.

ALL CONCUR.