**Wolfgang R. BUCHHOLTZ, Appellant,**

v.

**Robert J. DUGAN, Individually; Robert J. Dugan, Director of University of Kentucky Office of Engineering Services; Ray M. Bowen, Individually; Ray M. Bowen, Dean of University of Kentucky College of Engineering; Tom Moore, Individually; Tom Moore, Budget Director of University of Kentucky College of Engineering; John W. Carrico, Individually; John W. Carrico, Auditor of the University of Kentucky; Bobbi Carpenter, Individually; Bobbi Carpenter, Officer of the University of Kentucky Police Department; and Board of Trustees of the University of Kentucky, Appellees.**

No. 1997–CA–000404–MR.

Court of Appeals of Kentucky.

Sept. 11, 1998.

Eugene F. Mooney, James M. Mooney, Lexington, for appellant.

Stephen L. Barker, Katherine M. Coleman, Paul Van Booven, Lexington, for appellees.

Before COMBS, DYCHE and SCHRODER, JJ.

DYCHE, Judge.

Wolfgang Buchholtz appeals from the Fayette Circuit Court's dismissal of his defamation claim by summary judgment, and dismissal of his wrongful discharge claim by directed verdict. We affirm.

Buchholtz initiated this action in Fayette Circuit Court on October 2, 1989, asserting state and federal claims relating to his termination from employment as the manager of the University of Kentucky (UK) College of Engineering Machine Shop. Appellees removed the matter to U.S. District Court for the Eastern District of Kentucky on October 23, 1989, and filed a counterclaim against Buchholtz to recover money for the value of services alleged to have been misappropriated. The U.S. District Court dismissed all of the federal claims in the complaint and remanded the pendent state claims as well as appellees' counterclaim to Fayette Circuit Court. On appeal to the Sixth Circuit Court of Appeals, the judgment of the District Court was affirmed.

On November 23, 1994, the Fayette Circuit Court granted appellees' motion for summary judgment on all claims except the two which are the subject of this appeal: wrongful discharge and defamation. After further discovery, the court granted summary judgment to appellees on the defamation claim, but allowed the wrongful discharge claim to proceed to trial. At the close of appellant's evidence, the court directed a verdict in favor of appellees, and appellees dismissed the counterclaim with leave to reinstate should appellant prevail here. This appeal followed.

Buchholtz was hired by UK in 1968 to be manager of the UK College of Engineering Machine Shop. Buchholtz had previously worked at Princeton University and was hired at UK by Robert Drake, Dean of the College of Engineering from 1966 to 1972, and formerly Buchholtz's supervisor at Princeton. Drake told Buchholtz that he could do private consulting work the equivalent of one day per week, like other faculty, as long as that work did not interfere with his UK duties or compete with local machine shops. The U.S. District Court, referring to a deposition of Drake, stated in its opinion that "it was understood that [Buchholtz's] private consulting work ... did not envision the use of other UK employees (i.e., shop machinists) during the regular work day or the appropriation of UK machine shop equipment and supplies." Buchholtz asserts in this appeal that he believed the authorization allowed the use of machine shop facilities, materials, and machinists.

Some of Buchholtz's private consulting work involved precision machining at the specific request of a client. When such work could be done by a local machine shop, Buchholtz declined to do it privately and scheduled it as an Office of Engineering Services (OES) job. When Buchholtz undertook a job privately he used the machine shop, shop scrap material, clients' materials, or materials he purchased from the shop inventory. Machinists under his supervision who worked on one of his private projects recorded their work by the clients' names on their time sheets, and Buchholtz reported this as "non-billable" time. He billed for the work privately, collected consulting fees through a post office box, paid machinists personally for their work, and deposited his earnings in his credit union account. From 1983–1988, Buchholtz acted as a private consultant and provided machining services for Databeam and Projectron, two Lexington companies owned by UK professor Lee Todd and then former-Dean Drake. Buchholtz never reimbursed UK for the use of the shop machines, scrap materials, or the machinists' work.

Robert Dugan became Buchholtz's supervisor in 1980, and Ray Bowen became Dean of the College of Engineering in 1983. Buchholtz continued his private consulting work, but never discussed the work or negotiated an agreement allowing him to continue the work with Dean Bowen. By 1987, some enmity had developed between Buchholtz and Dugan, and Dugan began observing Buchholtz's activities more closely.

On September 29, 1988, a "rush job" from Projectron came in and Buchholtz, who was leaving for a dental appointment, asked a machinist to suspend his work on a UK job in order to accommodate Projectron, explaining that he would correct the time sheets later. The machinist informed Dugan, and Dugan obtained copies of time sheets reflecting Databeam and Projectron work done by the machinists over the past five years. The following Monday Buchholtz was called into a meeting with Dugan, Bowen, and Tom Moore, Budget Director of the UK College of Engineering.

At this October 3, 1988, meeting, Buchholtz was informed that there were discrepancies in time sheets and a possible misappropriation of funds, specifically related to Databeam and Projectron, and that an audit might be necessary to investigate these problems unless Buchholtz could explain them. Buchholtz stated that he had performed some weekend work for Projectron, and encouraged UK to proceed with an audit. Buchholtz was suspended without pay pending the outcome of the audit.

John Carrico, an auditor in the Office of Management and Organization, conducted the internal audit. He reported that from 1983–88, UK machinists had worked approximately 1,394 hours on private projects that were never billed through the University, amounting to $23,745 in losses to UK. He concluded that "it appears the Machine Shop Manager is in violation of University Personnel Policy and Procedure 18.0 regarding outside employment and [Kentucky Revised Statutes] KRS 514.030, KRS 514.070 and KRS 517.110 regarding theft and misapplication of property." After the issuance of this report, in the words of the Sixth Circuit opinion, Buchholtz was "terminated for violating UK Staff Personnel and Policy Procedures in violation of University or department rules; falsification of University records; and dishonesty on the job."

The UK Police Department filed a criminal complaint against Buchholtz charging him with two counts of failure to make required disposition of property. He was indicted by the Fayette County Grand Jury, pled not guilty, and was tried. At the close of the prosecution's case, a directed verdict of acquittal was entered on appellant's behalf. The court concluded that the Commonwealth had failed to prove that there was a "known legal obligation" to pay the money to UK. The parties then proceeded down the winding road of civil litigation which has led to this appeal.

■ Appellant's first assignment of error is that the trial court erred in directing a verdict in favor of UK on the wrongful discharge claim. Under Kentucky law, a directed verdict is appropriate when, drawing all inferences in favor of the nonmoving party, a reasonable jury could only conclude that the moving party was entitled to a verdict. *Gar-*

*rison v. Jervis B. Webb Co.,* 583 F.2d 258 (6th Cir.1978).

Appellant was permitted to present evidence at trial that the oral agreement reached with Drake removed him from the status of an at-will employee pursuant to *Hammond v. Heritage Communications, Inc.,*Ky.App., 756 S.W.2d 152 (1988). In *Hammond,* the employee was told that she would not be fired if a nude photograph of her appeared in a men's magazine. The Court held that the oral assurances of the employer altered the employee's at-will status for a specific period of time to be determined according to the specific facts, including the understanding of the parties. *Id.* at 155. Thus, whether appellant had entered into an oral contract that would modify his at-will status was properly a question for the jury.

On the motion for directed verdict, the trial court had to infer that such an oral modification of the contract had occurred. The trial court correctly ruled that even if such a contract had been established, appellant had acted beyond the scope of the oral agreement and was subject to termination at will. By appellant's own admission, the agreement with Dean Drake was not to allow his private consulting work to interfere with his UK duties, yet his trial testimony indicated that he had on occasion pulled machinists off of UK jobs and assigned them to Databeam or Projectron jobs. Appellant also testified that he did not even discuss with Drake the use of University personnel on University time in appellant's private business. Although we do not have the benefit of Drake's full deposition from the proceedings in U.S. District Court, those portions entered into the record confirm appellant's testimony and the U.S. District Court's opinion which indicated that Drake did not contemplate appellant using UK employees or appropriating machine shop facilities. The trial court did not err in ruling that no reasonable juror could find that appellant had acted within the scope of any oral modification of his terms of employment, and that UK properly terminated him as an at-will employee.

Appellant's second assignment of error is that the trial court erred in granting summary judgment (Kentucky Rules of Civil Procedure [CR] 56) to UK on the issue of defamation. He claims that the Carrico report which concluded that he might have been in violation of University policy as well as several criminal statutes was defamatory *per se.* Appellees contend that appellant admitted the truth of the factual findings contained in the report at trial, and that the "pure opinion" contained in the report is absolutely privileged.

"A party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence that there is a genuine issue of material fact for trial." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* Ky., 807 S.W.2d 476, 482 (1991); *Continental Casualty Company, Inc. v. Belknap Hardware & Manufacturing Co.,* Ky., 281 S.W.2d 914 (1955). Summary judgment is proper only when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor. *Steelvest,* 807 S.W.2d at 482. Only if appellant could have produced affirmative evidence at trial that the statements were defamatory would he have been entitled to prevail in opposing the summary judgment motion.

In Kentucky, truth is a complete defense for libel, even if the statements are libelous *per se. Bell v. Courier–Journal and Louisville Times Company,* Ky., 402 S.W.2d 84, 87 (1966). The offending statements cited in appellant's brief are as follows:

> It appears, based upon testing and review of records, observations, and interviews with various personnel and officials, that the Manager of the Machine Shop had machinists perform work for Projectron, Inc. and Databeam with University resources and on University time for which he personally received payment.

> \*     \*     \*     \*     \*     \*

> It appears the Machine Shop Manager is in violation of University Personnel Policy and Procedure 18.0 and KRS 514.030, 514.070 and 517.110 regarding theft and misapplication of property.

Appellant admitted that he used University machinists for his personal work. The first statement cannot be defamatory since appellant conceded its truth.

Personnel Policy and Procedure 18.0 requires any UK employee seeking outside employment to abide by the following: (1) outside employment hours should not conflict with scheduled University work hours; (2) outside employment should not conflict with University responsibilities or affect the employee's ability to satisfactorily perform in the University position; (3) outside employment should not cause the employee to arrive late for, or leave early from, scheduled University work hours; and (4) outside employment should not constitute a conflict with University interests. KRS 514.070, 514.030, and 517.110 deal with theft by failure to make required disposition of property, theft by unlawful taking, and misapplication of entrusted property, respectively.

In *Yancey v. Hamilton*, Ky., 786 S.W.2d 854, 857 (1989), the Supreme Court, adopting the Restatement (Second) of Torts definition of pure opinion, stated:

> A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory fact as the basis for the opinion.

(Citation omitted.) The Court went on to state that pure opinion "occurs where the commentator states the facts on which the opinion is based . . .," and held that this type of statement is absolutely privileged.

We agree with the trial court that the ten-page Carrico report sufficiently spells out the basis from which Carrico drew his conclusions. Carrico outlined the purpose, scope, and background for the report. The body of the report discussed his specific findings as a result of the audit, and he concluded with his recommendations and an appendix summarizing the amount and value of the hours lost to UK through appellant's actions. Carrico's opinion does not imply the allegation of an undisclosed defamatory fact upon which the opinion was based. On the contrary, he spelled out precisely the basis for his conclusions in the body of the report. The trial court correctly ruled that the report was "pure opinion" and, as such, absolutely privileged. Summary judgment was proper.

The judgment of the Fayette Circuit Court is affirmed.

All concur.