Helen **LAMBERT**, Administratrix of the Estate of Donald Lambert, Deceased, Appellant,

v.

**FRANKLIN REAL ESTATE COMPANY**; American Electric Power Company, Inc.; American Electric Power Service Corporation; and Vanceburg Utilities Commission, Appellees.

Carl Marshall and Ann Marshall, Individually, and as Next Friend of Jonna Lee Marshall, Carl Edward Marshall, III, and Todd Andrew Marshall, Appellants,

v.

Franklin Real Estate Company; American Electric Power Company, Inc.; American Electric Power Service Corporation; and Vanceburg Utilities Commission, Appellees.

Franklin Real Estate Company; American Electric Power Service Corporation; and American Electric Power Company, Inc., Cross–Appellants,

v.

Carl Marshall and Ann Marshall, in Their Capacity as Next Friends of Jonna Lee Marshall, a Minor; Carl Edward Marshall, III, a Minor; and Todd Andrew Marshall, a Minor, Cross–Appellees.

Vanceburg Utilities Commission, Cross–Appellant,

v.

Carl Marshall and Ann Marshall, in Their Capacity as Next Friends of Jonna Lee Marshall, a Minor; Carl Edward Marshall, III, a Minor; and Todd Andrew Marshall, a Minor, Cross–Appellees.

Nos. 1998–CA–000276–MR, 1998–CA–000281–MR, 1998–CA–000440–MR and 1998–CA–002733–MR.

Court of Appeals of Kentucky.

Feb. 18, 2000.

Rehearing Denied April 21, 2000.

Review Denied March 14, 2001.

William P. Emrick, Ashland, for Appellants in 1998–CA–000281–MR.

James D. Ishmael, Jr., Lexington, for Vanceburg Utilities Commission.

Wendell S. Roberts, Donald R. Yates, II, Ashland, for Franklin Real Estate Co.; American Electric Power Service Corp.; and American Electric Power Co., Inc.

Before: BUCKINGHAM, HUDDLESTON, and SCHRODER, Judges.

## OPINION

SCHRODER, Judge:

This is a case in which American Electric Power Company, Inc., American Electric Power Service Corporation, Franklin Real Estate Company[1] and Vanceburg Utilities Commission are accused of being negligent in causing an accident that killed two men and severely injured another. Prior to the close of the appellants' case, the trial court granted a directed verdict in favor of the appellees. We affirm the directed verdict as to American Electric Power Company, Inc., American Electric Power Service Corporation, and Franklin Real Estate Company. We reverse and remand the directed verdict as to Vanceburg Utilities Commission.

On March 19, 1994, appellant, Donald Lambert, appellant, Carl Marshall,[2] and

---

1. The foregoing three appellees/cross-appellants are affiliated companies with common representation and are defendants in this case in their capacity as the owner, or as affiliates of the owner, of the property on which the accident occurred. As necessary, these three appellees are referred to collectively as the "landlord appellees." The "appellees" refers to the landlord appellees and Vanceburg Utilities Commission collectively.

2. The appellants/cross-appellees, Donald Lambert's estate and Carl Marshall, are referred to collectively as the appellants.

John Durman were attempting to repair a water well. Durman lived on the property, located in St. Paul, Lewis County, Kentucky, and leased the property from Franklin Real Estate Company. Franklin Real Estate Company is a wholly owned subsidiary company of American Electric Power Company. Durman paid his rent to Kentucky Power Company, likewise a wholly owned subsidiary of American Electric Power Company. American Electric Power Service Corporation is also an affiliate of American Electric Power Company, though it apparently had little involvement with the St. Paul property.

In the course of attempting to repair the well, the workers removed the pipe from the well. The pipe was in 10–foot sections and was made of steel. Initially, as a 10–foot section was pulled to the surface, the workers uncoupled the sections. Four 10–foot sections were removed in this manner. However, after four sections had been removed, the workers encountered rusty pipe which they were unable to readily uncouple. As a result of this difficulty, the last three sections of pipe, a total of 30 feet in length, were removed as a single unit. Attached to the end of this 30–foot section was the well's foot valve.

The workers concluded that the well's foot valve was defective, and Durman and Marshall drove to Portsmouth, Ohio, to purchase a new one. Following their return, the workers attached the new valve to the 30–foot section of pipe. The workers then raised the pipe to put it back into the well. As the men raised the pipe in the air, the pipe came into contact, or into extemely close proximity, with a 7,200–volt electric power line. Electric current traveled from the line down the pipe killing Durman and Lambert and severely injuring Marshall.

Carl Marshall, the estate of Donald Lambert, and the estate of John Durman filed suits seeking damages for injuries incurred in the accident, and the actions were joined. The children of Marshall, Durman, and Lambert were later added as parties on claims relating to their loss of consortium with their fathers. The Durman estate and the Durman children settled their claims prior to trial.

The trial commenced on December 1, 1997. Following opening statements, the appellants attempted to read aloud to the jury portions of certain depositions. Upon objection by the appellees, the trial court refused to allow the depositions to be read aloud on the basis that the deponents were available as witnesses. Instead of calling the deponent witnesses, following the trial court's ruling, Carl Marshall was called as the first trial witness. Following Marshall's testimony, the appellants' only expert witness, Dr. Frederick Charles Trutt, Professor of Electrical Engineering at the University of Kentucky, was called. Following the conclusion of the expert witness's testimony, the appellees moved for a directed verdict. The trial court granted the motion for a directed verdict. These appeals and cross-appeals followed.

The appellants contend that the trial court erred by entering a directed verdict before they had rested their case. In general, a directed verdict should not be granted until the conclusion of the plaintiff's case. Rule 50.01 "recognizes the right of a party to move for a directed verdict *at the close of* the evidence offered by an opposing party." Kurt A. Philipps, Jr., *Kentucky Practice*, CR 50.01 (5th ed.1995) (emphasis added). Nevertheless, Kentucky cases recognize the power of a trial court to decide a case upon the opening statements of counsel where they clearly and definitely disclose no cause of action or no defense, or admit facts the existence of which precludes a recovery by their clients. However, the cases admonish that the practice is a dangerous one and the power should be exercised with caution. *See Raco Corp. v. Edwards*, Ky., 272 S.W.2d 345 (1954); *Hill v. Kesselring*, 310 Ky. 483, 220 S.W.2d 858 (1949); *Co–De Coal Co. v. Combs*, Ky., 325 S.W.2d 78 (1959); and *Brinton v. Motte*, Ky., 244 S.W.2d 480 (1951). It may be inferred

from these cases that if, at a later point in the trial, the evidence clearly and definitely discloses no cause of action, then the trial court may likewise direct a verdict.

In any event, even if we accept the appellants' argument that the trial court prematurely granted the directed verdict, a judgment may not be set aside based upon a ruling of the trial court if the ruling was harmless error. CR 61.01. The trial court's granting of a directed verdict prior to the close of the appellants' case was harmless error as to the landlord appellees. On the other hand, at the time the directed verdict was granted to Vanceburg Utilities, the evidence did not clearly and definitively establish that the appellants could not prove negligence against it. Hence, the standard for granting a directed verdict was not met, was not harmless error, and the granting of a directed verdict in favor of the power company was not proper.

The status of the landlord appellees and Vanceburg Utilities, and the applicable law, are significantly different, so the directed verdicts of the two classes of appellees must be considered individually. First we consider the directed verdict granted in favor of the landlord appellees.

■■■ A directed verdict is appropriate when, "drawing all inferences in favor of the nonmoving party, a reasonable jury could only conclude that the moving party was entitled to a verdict." *Buchholtz v. Dugan*, Ky.App., 977 S.W.2d 24, 26 (1998). The trial court is required to "consider the evidence in its strongest light in favor of the party against whom the motion was made and must give him the advantage of every fair and reasonable intendment that the evidence can justify." *Lovins v. Napier*, Ky., 814 S.W.2d 921, 922 (1991). In our review, we must "consider[ ] the evidence in the same light." *Id.*

■■■ Franklin Real Estate owned the property where the accident occurred.

Franklin Real Estate is a wholly owned subsidiary of American Electric Power. American Electric Power Service Corporation is likewise a wholly owned subsidiary of American Electric Power. While it so happens that the major overall corporate mission of these appellees is to engage in the production and transmission of electricity, nevertheless they are parties to this case only in their capacity as the landlords of the St. Paul property where the accident occurred.[3] The electric lines involved in the accident were not owned, maintained, or otherwise used by the landlord appellees in their electric utility business. "In the absence of a showing of ownership or a duty to inspect and maintain an electric system, an electric light company can not be held liable for injuries occasioned by negligent maintenance of the system." *Louisville Gas & Elec. Co. v. Johnson*, Ky., 282 S.W.2d 138, 139 (1955). Hence, the landlord appellees' negligence depends upon the duties owed by a landlord to his tenants and his tenants' guests.

■■■ "[A] landlord has a duty to disclose a known defective condition which is unknown to the tenant and not discoverable through reasonable inspection." *Milby v. Mears*, Ky.App., 580 S.W.2d 724, 728 (1979). However, "[i]t has been a long-standing rule in Kentucky that a tenant takes the premises as he finds them. The landlord need not exercise even ordinary care to furnish reasonably safe premises, and he is not generally liable for injuries caused by defects therein." *Milby* at 728. "[T]he landlord is under no implied obligation to repair the demised premises in the absence of a contract to that effect, nor is he responsible to a tenant for injuries to persons or property caused by defects therein, where there has been no reservation on the part of the landlord of any portion of the rented premises. In such cases the law applies to the contract or lease the doctrine of caveat emptor." *Home Realty Co. v. Carius*, 189 Ky. 228,

---

**3.** The St. Paul property was originally acquired by the American Electric group in anticipation of someday building an electric generating plant in the area.

224 S.W. 751 (1920). Where the tenant is put in complete and unrestricted possession and control of the premises, as here, the landlord is liable only for the failure to disclose known latent defects at the time the tenant leases the premises. *Carver v. Howard,* Ky., 280 S.W.2d 708, 711 (1955). "[T]he duties and liabilities of a landlord to persons on the leased premises by the consent of the tenant are the same as those owed to the tenant himself. For this purpose they stand in his shoes. This rule applies to the tenant's wife or child. Where the tenant has no redress against the landlord, those on the premises in the tenant's right are likewise barred." *Clary v. Hayes,* 300 Ky. 853, 190 S.W.2d 657, 659 (1945).

■ Based upon the testimony of the two appellant witnesses who testified at trial, the exhibits introduced at trial, and the avowal testimony of the remaining witnesses, under the foregoing standards, if the trial had proceeded until the conclusion of the appellants' case in chief, a reasonable, properly instructed jury could not have assigned any proportion of fault in the accident to the landlord appellees. This conclusion is borne out by the exhibits depicting the accident scene. The photographic evidence discloses that the power lines are open, obvious, and unobstructed. In addition, we have the admissions of appellant, Carl Marshall, who testified as follows:

Q. (by Wendell Roberts, counsel for landlord appellees): And, you saw the power lines over the well before the accident, didn't you?

A. I never give them a whole lot of—

Q. But, you saw them before the accident?

A. Yeah. I would say.

Q. Sir?

A. Yes.

Q. You didn't do anything to avoid them, did you?

A. No.

. . . .

Q. (by William Emrick, counsel for Carl Marshall): If it was open and obvious to you, would it have been open and obvious to anyone else?

A. Yes. I believe so, yeah.

Similarly, the appellant's expert, Dr. Frederick Charles Trutt testified:

I certainly believe the poles are there and quite visible. I believe that if you look up, you can see the lines are there. The difficulty that I see is perhaps in judging distance and recognizing the hazards of the line. Certainly, the poles are very obvious and visible.

In summary, the appellants' key witnesses concede that the power lines were open and obvious. The danger of clearly visible high power transmission lines is as open and obvious to a tenant as it is to a landlord.[4] The proximity of the lines to the well was as open and obvious to the tenant as to the landlord. These conditions were not latent, but, rather, were open and obvious and were either known to the tenant and his guests or could have been discoverable through reasonable inspection.

In view of the law regarding a landlord's liability to his tenant and his tenant's guests, the trial court's directed verdict in favor of the landlord appellees prior to the closing of the appellants' cases was not reversible error. While the better practice would have been to wait until the close of the plaintiffs' case, in this instance, the granting of a directed verdict in favor of the landlord appellees prior to closing was harmless error. CR 50.01.

■ The negligence liability standards applicable to an electric utility are different from those applicable to a landlord, so the appropriateness of a directed verdict in favor of Vanceburg is a different matter. Due to the dangerous nature of

---

4. We discern no additional duties to be placed upon the landlord appellees because, by hap-

penstance, they happen to otherwise engage in the electric utility business.

electricity, an electric utility company is chargeable with the highest degree of care to protect all persons in all places they have a right to be. *Kentucky Power Co. v. Carter,* Ky., 321 S.W.2d 410, 413 (1959). "[S]uppliers of electric current must exercise the utmost care and skill to protect their patrons and the public against danger and harm." *Kentucky Power Co. v. Kilbourn,* Ky., 307 S.W.2d 9, 12 (1957). Utmost care means the highest degree of care, and conversely, highest degree of care means the utmost care and skill. *Blackwell's Adm'r v. Union Light, Heat & Power Co.,* Ky., 265 S.W.2d 462, 464 (1953), *overruled in part on other grounds* by *Union Light, Heat & Power Co. v. Blackwell's Adm'r,* Ky., 291 S.W.2d 539 (1956). "In constructing and maintaining electrical lines the highest degree of caution must be exercised for the protection of all persons at places where they have a right to go, because in dealing with so deadly an instrumentality the highest degree of care and skill known in the conduct of such business to prevent injury to such persons is required." *Vaught's Adm'x v. Kentucky Utilities Co.,* Ky., 296 S.W.2d 459, 461 (1956). However, generally, an electric utility company is not liable where no injurious consequences would be reasonably perceived, or the act complained of reasonably anticipated, nor would the company be liable if the injury occurred through some independent or unrelated and efficient cause. *Carter* at 413. The question in determining the existence or absence of negligence is whether the injury can be reasonably foreseen or anticipated as likely to occur, taking into account the company's past experience and the practice of others under similar circumstances. *Vaught's Adm'x* at 461. The two controlling factors upon which rest the determination of whether, in the exercise of the utmost care, a power company reasonably may have anticipated the character of accident which occurred are the location of the line and the nature of the operation which caused the injury. *Kentucky & West Vir-*

*ginia Power Co. v. Adams,* Ky., 267 S.W.2d 717, 718 (1954).

In ascertaining whether Vanceburg Utilities exercised the utmost care and skill, and whether a directed verdict was proper, the case *Green River Rural Electric Co-op. Corporation v. Blandford,* 306 Ky. 125, 206 S.W.2d 475 (1947), is instructive. In *Green River,* Vird Blandford was engaged in taking a 30–foot pipe out of his brother's water well in order to replace the check valve at the end of it. An electric line ran through the branches of a tree directly over the well house. One wire, carrying 6,900, volts, was 27½ feet above the ground, and another called the 'dead wire' was about 23½ feet. Just as the bottom of the pipe came out of the well, the top of it either came in contact with an electrically charged branch of the tree or touched the high-tension wire. Vird Blandford was knocked unconscious and suffered severe injuries, including the loss of one of his hands.

In addressing the power company's denial of negligence, the *Green River* opinion states, "[t]he appellant passes by the evidence that it was negligence to maintain such a highly deadly line touching or even within eighteen inches of the branches of a tree in a man's yard over his well. That such is negligence cannot be doubted." *Id.* at 477. The opinion further noted that, "[t]his wire was in a man's yard, through the branches of a tree, over a well which was being used, and, of course, at a place where people would frequently be. The defendant knew of the well and had recently run a new line for the installation of the electric pump. It is not to be exonerated from liability on the assumption no one would ever touch the branches of the tree or the wire itself, which was suspended so low immediately over the well." *Id.*

While in the present case the lines here were not obscured by tree branches, nevertheless, the following similarities are noted: (1) in each instance the electric lines were "highly deadly"; (2) in each instance the electric lines ran directly over,

or in extremely close proximity to, a water well; (3) in each instance the lines were located over the yard of the residence, rather than over open country; and (4) in each instance the power company had actual knowledge of the well.[5]

■ Vanceburg Electric argues that it breached no duty because it breached no official safety codes or standards. However, an electric company's compliance with safety standards does not in itself free the company of negligence. *Vaught's Administratrix,* 296 S.W.2d at 462. Further, Vanceburg seeks to shift full blame to the appellants based upon their decision to remove the final section of pipe in a 30–foot unit instead of uncoupling it into 10–foot sections. However, as the Court stated in *Green River,* "[w]e cannot agree that raising the pipe as a unit instead of unscrewing the three sections, of which it was composed, was negligence. The method was a simple and reasonable way of getting it out. The plaintiff was where he had a right to be and engaged in doing the work in an ordinary and prudent way." *Green River* at 478.[6]

In light of *Green River,* we cannot conclude that a directed verdict in favor of Vanceburg Utilities was proper. A reasonable jury may have concluded that Vanceburg Utilities failed to exercise utmost care when it failed to take steps to insulate the wire, or otherwise provide warnings that the wires were not insulated and presented a greater danger than one may have understood the situation to be if he assumed the wires were insulated. We therefore reverse the judgment of the trial court insofar as it granted a directed verdict in favor of Vanceburg Utilities.

At the outset of their case in chief, appellants' trial counsel sought to read portions of the deposition testimony of three witnesses: Roger Wheeler of American Electric Power; Joyce Halterman of Vanceburg Utilities; and Dalles Burris of Vanceburg Utilities. Upon the objection of the appellees, the trial court denied the request to read the depositions because it determined that "the grounds down in [CR 32.01(c) ] have to be met before you can do that." The appellants contend that they were entitled to read the deposition testimony pursuant to CR 32.01(b). We agree with the appellants that the trial court erred in its reasoning that CR 32.01(c) applied in these circumstances. CR 32.01 provides that at a trial:

> any part or all of a deposition, so far as admissible under the rules of evidence applies as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with *any* of the following provisions:
>
> . . . .
>
> (b) The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Rule 30.02(6) or 31.01(2) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party may be used by an adverse party for any purpose. (Emphasis added).

---

**5.** The power lines were originally placed on the St. Paul property in the 1920s. A water well was drilled at the location in no later than the early 1950s, though the actual well involved in the accident, which was in extremely close proximity to the original well, was installed in the early 1990s. The well involved in the accident was 12 to 15 feet from the center of the power lines. Under the directed verdict standard, drawing all reasonable inferences in favor of the appellants, we must assume that Vanceburg Utilities had actual knowledge of the location of the well and the well's proximity to the power lines.

**6.** *Green River* was a contributory negligence case and therefore, the conclusion reached in that case would not preclude Vanceburg Utilities from arguing that the appellants should bear some portion of the blame for employing this method in this comparative negligence case.

The use of the word "any" in the prefatory portion of the rule means that CR 32.01(b) and CR 32.01(c) [7] are independent grounds for invoking the rule. Under CR 32.01(b) "[t]he testimony may be read to the jury even though a party is available to testify in person. Thus, a deposition's use at trial of a party is different from that of a witness which cannot be read at trial except under the circumstances spelled out in subsection (c)." Kurt A. Philipps, Jr., *Kentucky Practice,* CR 32.01 (5th ed.1995). The trial court's interpretation of the rule was erroneous.

■ On remand, if the situation arises again, the trial court should ascertain whether Vanceburg Utilities witness Dallas Burris qualifies as an officer, director, managing agent, or person designated under Rule 30.02(6) or 31.02(2).[8] If so, then the appellants should be permitted to use his testimony in accordance with the rule as explained herein.

■ The appellants argue that the trial court erred by limiting and excluding expert testimony. They argue that their expert, Dr. Trutt, "was clearly qualified to give opinion testimony about the standard of care of power companies." The appellants do not refer us to the specific questions, answers, and court rulings to which their argument refers. Dr. Trutt's trial testimony is rife with objections, bench conferences, and court rulings. At one point, in the course of a bench conference, the subject turned to the legal standard of care and the trial court stated, "I'm not going to let him testify as to the standard of care.... That's for me to put in the jury instructions when the time comes."

We assume the appellants refer to this discussion. Dr. Trutt, an electrical engineer, was not qualified to give a legal opinion as to the legal standards to establish the liability of a power company. Kentucky Rules of Evidence 702. The ruling of the trial court was not in error.

■ Finally, the appellants argue that the trial court erred by refusing to allow them to amend their complaint to name Kentucky Power as a party. Inasmuch as we have determined that the landlord appellees are, as a matter of law, not liable and that the trial court properly directed a verdict in favor of the landlord appellees, this issue is moot. However, we note that "[t]hough CR 15.01 provides that leave to amend 'shall be freely given when justice so requires,' it is still discretionary with the trial court, whose ruling will not be disturbed unless it is clearly an abuse." *Graves v. Winer,* Ky., 351 S.W.2d 193, 197 (1961). Here, the motion to add Kentucky Power as a party was made on the first day of the trial. We further note that the corporate structure and relationships of the relevant potential landlord defendants were disclosed by the landlord appellees during discovery. We discern no abuse of discretion in the denial of the appellants' motion to add Kentucky Power as a party.

■ In their cross-appeal the appellees argue that the trial court erred by granting appellants, Carl Marshall and Ann Marshall, leave to file a second amended complaint on behalf of their three minor children for loss of parental consortium.[9] We agree.

In *Giuliani v. Guiler,* Ky., 951 S.W.2d 318 (1997), it was held that a surviving

---

7. CR 32.01(c) provides for the use of any witness's deposition at trial, not just an adverse witness's deposition, in a variety of situations, for example, if the witness is dead, is at a distance greater than 100 miles from the trial, is a state constitutional officer, is a medical professional, etc.

8. On appeal, Vanceburg Utilities argues that Burris's deposition does not qualify under the rule. We do not have a sufficient factual

basis to determine whether he does or doesn't, and therefore leave the decision for the trial court. We also note that upon remand, the depositions of landlord witnesses Wheeler and Halterman will not qualify under CR 32.01(b), as the landlord appellees will no longer be parties to the litigation.

9. The appellees do not contest the loss of consortium claim of Lambert's child.

child may file a claim for loss of parental consortium. The *Giuliani* opinion does not explicitly state whether the cause of action approved was for wrongful death actions only, or whether the cause of action is also available in cases, such as the present case, where the parent is severely injured. We believe the former interpretation of the opinion is the sounder interpretation.

In *Giuliani*, the mother died during the birth of her fourth child. *Giuliani* was a wrongful death case, and it was within a wrongful death context that the Supreme Court approved loss of parental consortium. Moreover, the opinion addressed itself to overruling *Brooks v. Burkeen*, Ky., 549 S.W.2d 91 (1977), and *Adams v. Miller*, Ky., 908 S.W.2d 112 (1995), cases which denied loss of parental consortium in cases of wrongful death.

Further evidence that the opinion only intended to apply to cases of wrongful death is the statement, "[t]he claim of loss of parental consortium is a reciprocal of the claim of the parents for loss of a child's consortium which was recognized in KRS 411.135." *Giuliani* at 321. KRS 411.135 provides a parent with a loss of consortium claim for the loss of a minor child only in wrongful death actions. Hence, the "reciprocal" of KRS 411.135 would appear to be limited to wrongful death cases.

Also instructive is the opinion's statement that "[w]e are persuaded by the decision in *Weitl [v. Moes*, Iowa, 311 N.W.2d 259 (1981)] that there is no legal distinction between the claim of a parent for loss of a child's consortium from the claim of a child for the loss of a parent's consortium." *Giuliani* at 321. While the *Weitl* case did not limit a child's loss of parental claim to wrongful death cases,[10] nevertheless, the Supreme Court's statement that there is "no legal distinction" between a parent's loss of consortium claim for a child and a child's loss of consortium claim for a par-

ent, limits the child's claim to those situations in which the parent would have a cause of action. Currently in Kentucky, a parent's loss of a child's consortium is limited to cases of wrongful death of the child. KRS 411.135. It follows that, if there is no legal distinction between the two causes of action, then the cause of action for the loss of parental consortium should likewise be limited to cases involving the wrongful death of the parent.

Finally, the *Giuliani* opinion states that, "[t]he loss of parental consortium is simply another factor to be considered in reaching a fair and equitable conclusion to any constitutionally protected *wrongful death claim*," *Giuliani* at 322 (emphasis added), and "[t]he proof of such loss [of parental consortium] and the necessary proof of monetary loss resulting therefrom are factors to be considered by the trier of fact separate from any *wrongful death claim* pursued under the wrongful death statute." *Id.* at 323 (emphasis added).

In summary, based upon the context of *Giuliani*, its language, and the absence of a direct holding that the loss of parental consortium is available beyond wrongful death cases, *Giuliani* is best read as providing a cause of action to a child only in those cases where there is likewise an action for the wrongful death of the parent. Hence, on remand, the loss of consortium claim of the Marshall children should be dismissed.

For the foregoing reasons, the judgment of the Lewis Circuit Court is affirmed in part, reversed in part, and remanded for additional proceedings consistent with this opinion.

All concur.

---

10. In Iowa, however, a parent's entitlement to loss of child consortium is not limited to wrongful death actions. *Weitl* at 265.