RENDERED:  JANUARY 22, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0695-MR

JUANITA WHITIS AND
TAMMY THOMPSON                                                    APPELLANTS


                        APPEAL FROM PULASKI CIRCUIT COURT
v.              HONORABLE JEFFREY T. BURDETTE, JUDGE
                        ACTION NO. 15-CI-01259


VIRGIL LEO MEECE, IN HIS
CAPACITY AS EXECUTOR TO
THE ESTATE OF NELLIE MEECE;
VIRGIL LEO MEECE, INDIVIDUALLY;
SANDRA CURRENT, HEIR OF
NELLIE MEECE; DENISE HARGIS,
HEIR OF NELLIE MEECE;
DAVID L. WHITIS, HEIR OF
NELLIE MEECE; TERRY CHANEY,
HEIR OF NELLIE MEECE; AND GARY
WHITIS, HEIR OF NELLIE MEECE                                        APPELLEES


                                OPINION
                                AFFIRMING

                          ** ** ** ** **

BEFORE:  COMBS, KRAMER, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Juanita Whitis and Tammy Thompson bring this appeal from an April 1, 2019, Trial Order and Judgment of the Pulaski Circuit Court. We affirm.

Nellie Meece was born in 1919 and passed away on October 14, 2014. Nellie had four children – Juanita Whitis, Virgil Leo Meece (Leo), Joyce Hargis, and Betty Whitis. Juanita and Leo were Nellie's only surviving children at the time of her death. It is undisputed that Nellie was suffering from dementia when she passed away.

In the Pulaski District Court (Action No. 14-P-00540) on November 20, 2014, the court admitted into probate the Last Will and Testament of Nellie executed on July 20, 2011. Pursuant to the terms of the July 2011 Will, the court appointed Leo as executor.

Thereafter, on December 23, 2015, Juanita and Tammy Thompson (daughter of Betty Whitis) filed a petition in the Pulaski Circuit Court (Action No. 15-CI-01259) against Leo, in his capacity as executor of the estate of Nellie, in his capacity as attorney-in-fact for Nellie, and as beneficiary of Nellie. Additionally, Juanita and Tammy named Sandra Current, Denise Hargis, David Whitis, Terry Chaney, and Gary Whitis as respondents. These respondents were grandchildren of Nellie. In the petition, Juanita and Tammy claimed that Nellie lacked testamentary capacity to execute the July 2011 Will, that Leo exercised undue

influence over Nellie at the time of execution of the Will, and that Leo breached his fiduciary duty to Nellie while acting as her attorney-in-fact. Juanita and Tammy also sought the removal of Leo as executor based upon a conflict of interest.

In the probate action (14-P-00540), a "lost will" of Nellie's was discovered. The lost will was executed by Nellie on September 2, 2011, and it was admitted into probate by the district court on August 1, 2017. As with the July 2011 Will, Leo was named as executor in the September 2011 Will.

As a result, Juanita and Tammy filed an amended petition in the circuit court (Action No. 15-CI-01259) on September 29, 2017. Therein, Juanita and Tammy alleged that: Nellie lacked testamentary capacity to execute the September 2011 Will, Leo exercised undue influence over Nellie at the time Nellie executed the Will, and Leo breached his fiduciary duty to Nellie while acting as her attorney-in-fact.

In the circuit court action, a jury trial eventually ensued in March of 2019, and the circuit court granted Leo's motion for directed verdict upon the undue influence claim, breach of fiduciary duty claim, and the punitive damages claim. The circuit court also denied Juanita's and Tammy's motion to amend the pleadings to assert a claim of intentional interference with an inheritance or gift.

The jury returned a verdict finding that Nellie was of sound mind when she signed the September 2011 Will. This appeal follows.

Juanita and Tammy contend the circuit court erred by denying their motion to amend the pleadings to assert a claim of intentional interference with an inheritance or gift against Leo. Although this tort has not been recognized in Kentucky, Juanita and Tammy argue that the Kentucky Court of Appeals has authority to recognize this new tort and urges this Court to do so. Additionally, Juanita and Tammy maintain that Leo would not suffer prejudice as the facts underlying this tort were "well known" to Leo. Appellants' Brief at 17.

The tort of intentional interference with inheritance or gift is set forth in RESTATEMENT (SECOND) OF TORTS § 774B (1979). This tort has never been expressly recognized in Kentucky, and we decline to recognize it herein.[1] To do so would be a substantial change in our jurisprudence in Kentucky and could be construed to interfere with the legislative scheme set out in Kentucky Revised Statutes Chapters 394, 395 and 396. Such a change would be better left to the sound discretion of the Kentucky Supreme Court. *See* Supreme Court Rule 1.040(5). Consequently, we conclude that the circuit court did not err by denying Juanita and Tammy's motion to amend the pleadings to conform with the evidence.

---

[1] We point out that the Court of Appeals may recognize new torts for the first time. *See Presnell Constr. Managers v. E.H. Constr., LLC*, 134 S.W.3d 575, 581 (Ky. 2004); *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 291 (Ky. App. 2009).

Juanita and Tammy next maintain that the circuit court improperly granted a directed verdict upon the claim of undue influence. In particular, Juanita and Tammy assert that they introduced sufficient evidence of undue influence to create a jury issue. According to Juanita and Tammy, the evidence was:

(1) [Nellie] suffered from dementia, with symptoms as early as 2005, and certainly by 2010; (2) Leo knew about the 2008 Will as he wrote the notes for it for the attorney, and thus knew of the favoritism in that Will to Juanita's family; (3) Leo knew that his mother had forgotten about the 1970 deed of the land to him, and kept quiet about it even though he knew she was attempting to devise that land, initially to one of Juanita's daughters and son-in-law, and later to him; (4) in 2011, when medical records indicate Nellie Meece was experiencing memory loss, confusion, agitation and even hallucinations, her son took her to an attorney on two occasions to do new Wills, and a new Power of Attorney without Juanita's knowledge or involvement; (5) Leo had possession of at least one of the 2011 Wills; (6) Leo became the Power of Attorney for his mother at the same time the September 2011 Will was signed; (7) the joint title to a vehicle between Nellie Meece and Juanita was changed to be just in Nellie Meece's name between July and September, 2011 Wills[;] (8) the 2011 Wills demonstrate a lack of knowledge of her bounty and an unequal disposition primarily favoring only one object of her bounty, without any explanation; (9) in January of 2011, a $47,000 Certificate of Deposit was changed from being in survivorship with Juanita to being in survivorship with Leo, despite the fact that Nellie had personally set up the CD in survivorship with Juanita at a time when she had been making approximately equal gifts of money and property to her surviving children; (10) the only time that Nellie Meece signed the entry card to her lock box between 2006 and 2011 was the day Leo obtained and cashed a CD jointly titled with him; (11) Leo used his

-5-

Power of Attorney to cash the other CDs, including ones held jointly with Joyce and Juanita, and placed them in the estate account, even though the money was not needed for Mrs. Meece's care; (12) Nellie Meece's ignorance of her bounty was demonstrated by (a) her reference to an 18[-]acre tract "obtained from Feldman Lumber Company"; (b) a reference to "Marvin Whitaker" property, which not only was not hers to devise, but also would have been referred to by her as the "Smotherman" tract; (c) a reference to a 23.04 tract which she had already conveyed to Leo in 1970, and (d) reference to "livestock" which she had not had in many years; (13) the testimony that Nellie Meece was mad at Juanita because of disputes with Leo seems most likely to have been the result of tales carried to Nellie from Leo; (14) regardless there was no evidence of [Nellie] being mad at Joyce or other family members.

Appellants' Brief at 11-13.

A directed verdict is proper only when drawing all inferences from the evidence in favor of the nonmoving party, a reasonable juror could only conclude that the moving party was entitled to judgment. Kentucky Rules of Civil Procedure (CR) 50.01; *Lambert v. Franklin Real Estate Co.*, 37 S.W.3d 770, 775 (Ky. App. 2000).

To invalidate a will based upon undue influence, it must be demonstrated that undue influence was at "a level of persuasion which destroys the testator's free will and replaces it with the desires of the influencer." *Bye v. Mattingly*, 975 S.W.2d 451, 457 (Ky. 1998) (citations omitted). The Kentucky

Supreme Court has recently set forth the legal framework to determine when a will

is to be invalidated based upon undue influence:

> In discerning whether influence on a given testator is "undue", courts must examine both the nature and the extent of the influence. First, the influence must be of a type which is inappropriate. Influence from acts of kindness, appeals to feeling, or arguments addressed to the understanding of the testator are permissible. Influence from threats, coercion and the like are improper and not permitted by the law. Second, the influence must be of a level that vitiates the testator's own free will so that the testator is disposing of her property in a manner that she would otherwise refuse to do. The essence of this inquiry is whether the testator is exercising her own judgment.
>
> In addition to demonstrating that undue influence was exercised upon the testator, a contestant must also show influence prior to or during the execution of the will. Undue influence exercised after the execution of the will has no bearing whatsoever upon whether the testator disposed of her property according to her own wishes.
>
> The influence must operate upon the testator at the execution of the will. If the influence did not affect the testator, then such conduct is irrelevant. However, even if the influence occurred many years prior to the execution of the will, but operates upon the testator at the time of execution, it is improper and will render the will null and void.
>
> To determine whether a will reflects the wishes of the testator, the court must examine the indicia or badges of undue influence. Such badges include a physically weak and mentally impaired testator, a will which is unnatural in its provisions, a recently developed and comparatively short period of close relationship between

the testator and principal beneficiary, participation by the principal beneficiary in the preparation of the will, possession of the will by the principal beneficiary after it was reduced to writing, efforts by the principal beneficiary to restrict contacts between the testator and the natural objects of his bounty, and absolute control of testator's business affairs.

. . . .

When a contestant seeks to claim that undue influence was employed upon a testator, the burden is upon the contestant to demonstrate the existence and effect of the influence. Merely demonstrating that the opportunity to exert such influence [existed] is not sufficient to sustain the burden of proof. When undue influence and a mentally impaired testator are both alleged and the mental impairment of the testator is proven, the level of undue influence which must be shown is less than would normally be required since the testator is in a weakened state.

*Getty v. Getty*, 581 S.W.3d 548, 555-56 (Ky. 2019) (quoting *Bye*, 975 S.W.2d at 457).

As to the alleged undue influence in this case, the evidence clearly showed that Nellie suffered from dementia in 2011; however, the jury found that Nellie did not lack the mental capacity to execute the September 2011 Will. While Juanita and Tammy claim that the September 2011 Will was unnatural, Juanita was not entirely left out of the Will but rather did not receive the share of the estate she had expected. As for Tammy, Nellie only gave one grandchild anything in the September 2011 Will – bedroom furniture. And, there was not a recently

developed or short period of close relationship between Nellie and Leo. No evidence was introduced that Leo participated in the preparation of the September 2011 Will or that he possessed the September 2011 Will. Finally, no evidence was presented that Leo restricted contact between Nellie and Juanita or between Nellie and Tammy.

Most importantly, we are cognizant that the alleged undue influence must be of a kind that is "inappropriate[,]" such as "threats, coercion and the like[.]" *Getty*, 581 S.W.3d at 555. Juanita and Tammy have failed to set forth any evidence of inappropriate influence exerted on Nellie by Leo as to the September 2011 Will. *See id.* Viewing the evidence most favorable to Juanita and Tammy, we believe that a reasonable juror could not find that Leo exerted undue influence over Nellie that would invalidate the September 2011 Will. Thus, we are of the opinion that the circuit court properly rendered a directed verdict upon Juanita and Tammy's undue influence claim.

Juanita and Tammy also maintain that the circuit court erroneously rendered a directed verdict upon the claim that Leo breached a fiduciary duty he owed Nellie pursuant to the power of attorney. Juanita and Tammy point out that Nellie executed a power of attorney appointing Leo on September 2, 2011. Juanita and Tammy argue that Leo breached his fiduciary duty by cashing certain

certificates of deposit held in survivorship with either Nellie and Juanita or Nellie and Joyce and by failing to preserve Nellie's estate.

In directing a verdict, the circuit court initially concluded that a fiduciary duty was owed to Nellie but "that relationship does not apply to Juanita Whitis and cannot be brought by Juanita Whitis on her mother's behalf." Trial Order and Judgment at 4. So, the circuit court reasoned that Juanita did not possess standing to bring the breach of fiduciary claim on behalf of Nellie. This was error.

Our Supreme Court has recognized that a decedent's heirs at law possessed standing to bring a claim for breach of fiduciary duty against the decedent's attorney in fact. *Priestly v. Priestly*, 949 S.W.2d 594, 598 (Ky. 1997). The holding in *Priestly* is broad enough to also include beneficiaries under a will. Similar to heirs at law, beneficiaries' interests are far greater than a mere expectancy upon the testator's death. *See id.* While it was error to conclude that Juanita lacked standing, the circuit court further decided:

> [M]ore significantly, though the Certificates of Deposit[s] were cashed by Virgil Leo Meece using his Power of Attorney, the funds attained were put into an account later designated as the estate account of Nellie Meece to be distributed to her heirs. Changing the state of the money does not rise to breach of a fiduciary duty.

-10-

Trial Order and Judgment at 4. We agree with the circuit court's above reasoning as to merits of the breach of fiduciary duty claim; thus, any error by the circuit court as to standing was merely harmless in this case. CR 61.01.

We view any remaining contentions of error as moot or without merit.

For the foregoing reasons, the Trial Order and Judgment of the Pulaski Circuit Court is affirmed.

ALL CONCUR.

| BRIEFS FOR APPELLANTS: | BRIEF FOR APPELLEE VIRGIL LEO MEECE, EXECUTOR OF THE ESTATE OF NELLIE MEECE AND INDIVIDUALLY: |
|---|---|
| Winter R. Huff<br>Somerset, Kentucky | |
| | John G. Prather, Jr.<br>Somerset, Kentucky |
| | Howard O. Mann<br>Corbin, Kentucky |